## SANDS et al. v. PFEIFFER AND SCHLEISCHER.

The general rule of law is, that whatever is once annexed to the freehold becomes parcel thereof, and passes with the conveyance of the estate. Though the rule has been in modern times greatly relaxed, as between landlord and tenant, in relation to the things affixed for the purposes of trade and manufacture, and also in relation to articles put up for ornament or domestic use, it remains in full force *as between vendor and vendee.*

As a general thing, a tenant may remove what he has added, when he can do so without injury to the estate, unless it has become, by its manner of addition, an integral part of the original premises; but as against a vendor, all fixtures pass to his vendee, even though erected for the purposes of trade and manufacture, unless specially reserved in the conveyance.

The strict rule which applies at common law between heir and executor, applies equally between vendor and vendee, and between mortgagor and mortgagee.

The engine and boilers, etc., used in a flour-mill, being permanently fastened to the mill, which had its foundation in the ground : *Held,* to be fixtures covered by a mortgage upon the premises, though put up after the execution of the mortgage, and held to pass to the purchaser of the mortgaged premises under a decree of foreclosure.

A mortgagor, after a sale of the mortgaged premises under a decree in a suit to foreclose the mortgage, has the right to the use and possession of the mortgaged premises until the execution of the sheriff's deed, but he possesses no right to despoil the property of its fixtures. The deed of the sheriff takes effect by relation at the date of the mortgage, and passes fixtures subsequently annexed by the mortgagor.

By the wrongful severance from the premises, the fixtures become personal property, for the recovery of which an action of replevin will lie by the purchaser after he obtains the sheriff's deed.

The remedy by injunction to restrain the removal of fixtures, under section 261 of the Practice Act, is only preventive ; it is not exclusive of any other remedy.

The objection to the misjoinder of a defendant must be taken in the Court below ; it can not be taken in this Court for the first time.

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

Action of replevin.

In October, 1855, the defendant, Pfeiffer, executed to the

plaintiffs a mortgage upon certain premises, situated in the city of San Francisco, to secure a loan made on that day of ten thousand dollars. Pfeiffer was at the time erecting upon the premises a flour-mill, and it was the understanding of the parties that the machinery, which is the subject of the present action, should be placed in the mill, and, in point of fact, was so placed within a few days after the execution of the mortgage. The mortgage was duly recorded in the office of the recorder of the county of San Francisco. In 1857, the loan not being repaid, the plaintiff instituted suit in the District Court, and obtained a decree for the foreclosure of the mortgage and sale of the mort-gaged premises, under which decree the premises were sold on the twenty-eighth of May, 1857, and at the sale the plaintiffs became the purchasers, and in due time received a sheriff's deed. On the commencement of the foreclosure suit, a notice of *lis pendens* was duly filed in the recorder's office.

On the fourteenth of November, 1857, a few days previous to the expiration of the time for the redemption of the premises, Pfeiffer, who had continued in possession, severed from the mill one double engine with fixtures, used in working the same, two fire-flue boilers, two sets of fire-grates, and two fire-fronts, one heater with pipes, two pumps and blower, and all utensils and apparatus belonging to the machinery, and sold and delivered them to the defendant, Schleischer, for $1000. The machinery thus removed was fixed to the premises, which had their foun-dation in the ground, by solid masonry, brick walls, and bolts of iron, all of which were more or less destroyed in the removal.

After obtaining the sheriff's deed, the plaintiffs brought the present action of replevin to recover possession of the machinery thus removed, and obtained judgment, from which the defendant Schleischer alone appeals.

In his answer to the complaint, the defendant Schleischer ad-mits that he was in possession of the specific articles recovered of him.

*Howard and Aldrich* for Appellant.

1. This is an action of replevin, to recover fixtures charged to have been wrongfully removed. It should have been in the na-ture of trespass or trover.

2. The sale and delivery to Schleischer of the engine, etc., before the expiration of the day of redemption, conveyed a good title, inasmuch as the mortgagor was the owner of the legal title in possession. Davis v. Cooper, 15 Conn., 556.

3. The feudal character of fixtures is abandoned in favor of commerce and the convenience of society. Amos and Ferard, Introduction.

4. A chattel does not become a fixture, unless the union is complete. It must be so attached to the soil, that it can not be

removed without injury to the freehold. Amos and Ferard, 5; 5 Denio, 527; 9 Conn., 63; 1 Denio, 527; 31 Eng. C. L. Rep., 217.

5. The right to remove trade fixtures, seems to have been firmly established in the English law in the time of Queen Ann. Poole's Case, 1 Salk., 368.

6. Matters of trade are of a personal nature, and therefore not fixtures. Elwes v. Maw, 3 East, 38; Lawton v. Lawton, 3 Atkyns, 13; Amos and Ferard, 138.

7. The rule as to structures for trade obtains between the executor and the heir, and operates in favor of the personal estate. Amos and Ferard, 139.

8. So, the executor is entitled to chattels of a mixed character combining trade and the profits in the land. In the case of cider-mills and steam-engines, it appears to have been thought they were less accessory to the soil than the trade. Amos and Ferard, 144, 149.

9. The rule between grantor and grantee is the same as between executor and heir. Amos and Ferard, 182; Gale v. Ward, 14 Mass., 352.

10. An engine put up for purposes of trade, is not a fixture as between vendor and vendee of the real estate. Randolph v. Gwin, 3 Halstead C. R., 88; 5 Wharton, 138; 5 Denio, 527; 20 Wend., 636.

In the case of Randolph v. Gwin, the engine was attached to a foundation let into the soil, quite as firmly as in the case at bar. The foundation may be a fixture, and yet the engine fastened to it with screws, so that it can be removed—be a mere personal chattel. Cope v. Romyn, 4 McLean's Rep., 384.

11. It appears that the building in this case, at the time of the mortgage, was intended as a flour-mill, but there is no evidence that it was contemplated to use a steam-engine. Any other power might have been in the contemplation of the parties. It does not, therefore, come within that class of cases where the contract contemplates the particular species of machinery.

12. It has been held, where the machinery of a factory may be easily removed without injury to the freehold, the mortgagee does not acquire title unless he is in possession. Gale v. Ward, 14 Mass., 352. The reason of the rule is still stronger where the machinery is put in the building after mortgage executed, and there is no equity in holding it for the mortgage-debt, nor any reason, except the technical rule that it has become a fixture. In such a case, although the severance is wrongful, if made before the possession of the mortgagee, the vendor will obtain a good title. 15 Conn., 556. The mortgagee out of possession can not maintain waste. His remedy is in equity. So, under our statutes, before the period of redemption has expired. Peterson v. Clark, 15 J. R., 205; Code Pr. Art., 235. There was a radical defect in the title of the plaintiff. The mortgagor in possession,

owning the legal title, could sell.   He was in possession by the consent of the mortgagee, and therefore, by his act, held out as owner.   2 Kent, 376, and note; Mowry v. Walsh, 8 Cowen, 238; Salters v. Everett, 20 Wend., 267.

*S. M. Bowman* for Respondents.

1. The machinery attached to the real estate can be no other than what the law denominates " fixtures."   Amos and Ferard on the Law of Fixtures, 2, say :   " With respect to the definition, it is necessary, in order to constitute a fixture, that the article in question should be let into or united with the land.   It is not enough that it has been laid upon the land, and brought into contact with it ; the definition requires something more than mere juxtaposition ; as that the soil shall have been displaced for the purpose of receiving the articles, or that the chattel should be cemented, or otherwise fastened to some fabric previously attached to the ground."

Here the engines and boilers were fastened to the ground in a most substantial manner, and could not be removed without injury to the land.   They became fixtures in every sense of the term.   The main wheel and gearing of a factory, and necessary to its operation, are fixtures.   Powell v. Munson, 3 Mason's R., 459.   Such machinery will pass to the vendee of the land as against the vendor.   Farrar v. Stackpole, 6 Greenleaf R., 154. So, manufacturing machinery will pass to a mortgagee as part and parcel of the inheritance, in like manner as they pass to a vendee.   Day v. Perkins, 2 Sandford's Ch. R., 364 ; Amos and Ferard on Law of Fixtures, 172–4 ; Walker v. Sherman, 20 Wend., 638.

It makes no difference that the fixtures were annexed after the mortgage was executed.   The fixtures in question were put there and annexed by the mortgagor, and for the purposes of the real estate, and in pursuance of the agreement of the parties to the mortgage at the time the mortgage was made.   The fixtures annexed after the mortgage only enhanced the value of the land.   The law makes no distinction between fixtures annexed before and after the execution of a mortgage.   The mortgagee is entitled, for his security, to everything he finds affixed to the mortgaged premises, except where a contrary intention of the parties is affirmatively shown.   Amos and Ferard, 185 ; see, also, Winslow v. Mer. Ins. Co., 4 Met., 306 ; and, generally, 2 Kent., 405–6.

2. The fixtures, on being wrongfully severed from the realty, become personal property.   The plaintiffs' title to the property being established by showing they purchased the land, together with the fixtures attached, their right to follow and recover the property wherever they can find it, would seem clear.   To deny this would be to deny the right of a party to recover in specie

that which belongs to him, and which has been taken from him tortiously.

By the act of severance, the property became the personal property of the plaintiffs. Cresson *v.* Stout, 17 John. R., 121; Mooers *v.* Wait, 3 Wend., 108; Union Bank *v.* Emerson, 15 Mass. R., 159.

In the case at bar, Pfeiffer had the qualified use and possession of the real estate and fixtures. But he had no right to despoil the real estate of its fixtures. By such act he could not acquire title to the fixtures, and hence it follows he could not give by his act title to the defendant Schleischer by his sale, because he had no title to convey. Fanant *v.* Thompson, 5 Barn. and Ald., 826; Morgan *v.* Varick, 8 Wend., 591; Schermerhorn *v.* Buell, 4 Denio, 425.

It is no answer to say that we can not make out our title to personal property by showing our title to land. The title to the land is merely incidental to the title to the fixtures, which, since the acquisition of our title, have been changed into personal property. It can be no objection to our title to the fixtures, that we show it by a deed under seal, and in connection with our title to land conveyed by the same instrument. Our object is to show the plaintiffs to be the owners of the fixtures, and entitled to the possession thereof, and any evidence that will establish this fact will be admissible, although it may establish title in the land at the same time. But we are not contending about the title of the land for any purpose of recovering it; we are only showing we become owners of the fixtures, and entitled to them by reason of the legal effect of the conveyance of the land. The Court will look at the substance of the matter in controversy, and if the object of the action is not to recover personal property, but in fact to try title to the land, then, of course, the action will not lie. A contrary doctrine might be inferred from a case in Pennsylvania, (2 Watts,) cited against us, but that decision is not good law, and was afterwards overruled. See Harlan *v.* Harlan, 15 Penn. R., 507.

The personal quality of the property in question being established, and finding it in the possession of the defendant Schleischer, who claims it under his co-defendant Pfeiffer, who had no title to it, and who severed it tortiously, the plaintiffs may recover it in this action. Cary *v.* Hotailing, 1 Hill, 313; Rockway *v.* Burnap, 12 Barb. S. C. R., 352.

Again: It is insisted further against us, that, inasmuch as Pfeiffer was entitled to the possession of the real estate for the period of six months after the sheriff's sale, during which time he severed the fixtures and sold them to Schleischer; that the plaintiffs must be limited to such remedy only as is provided for in sections 235 and 261 of Prac. Act.

But that remedy is only cumulative. It only enables the pur-

chaser to prevent a wrong. It is not exclusive of any other remedy. Suppose this Court had, by its order, restrained the very act complained of, and that Pfeiffer had, notwithstanding the order, disobeyed it? Would the plaintiffs be sufficiently compensated by the infliction of a penalty for the contempt? Could they not bring trespass, notwithstanding? And since trespass, detinue, trover, and replevin, are concurrent remedies, may they not bring either? Dunham v. Wyckoff, 3 Wend., 281; Clark v. Skinnes, 20 John. R., 466.

3. The first point of appellant is not well taken. This action was brought for specific chattels, alleged and proved to be in the possession of defendants. There was no question at the trial about the identity of the chattels, or of their possession by defendants. There is no appeal as to the judgment against Pfeiffer; for a portion of the chattels, Schleischer only appeals, and he admits in his answer he was in possession of the specific chattels recovered of him.

4. The second point of appellant is not well taken. The defendant Pfeiffer can not be regarded as a mortgagor in possession at the time he severed the fixtures. The mortgage had become due; the plaintiffs had commenced their proceedings of foreclosure; their *lis pendens* had been filed; their decree of sale entered; their sale under the decree made; they had become the purchasers under the sale; and Pfeiffer had set up no right to the fixtures. Pfeiffer was only a redemptioner in possession, and Schleischer, with a notice of the mortgage and of *lis pendens*, purchased at his peril.

5. In their other points, the appellants overlook the fact that the fixtures in question are not trade fixtures, but fixtures attached by the mortgagor, and must be considered as having been put up for the purpose of enhancing the value of the real estate.

6. The statement shows there was a mill in process of erection at the date of the mortgage, and that it was agreed by the parties at the time that it was to be completed. The best evidence of what kind of a mill was intended, is what was afterwards done. It is certain that the same mill was completed by putting in this machinery. Now, if any other kind of a mill was intended, it should have been averred and proved; especially should Pfeiffer have set up his right to remove the fixtures before sale to the plaintiff.

FIELD, J., after stating the facts, delivered the opinion of the Court—TERRY, C. J., concurring.

The material questions for consideration are: *first*, whether the machinery in controversy was so fixed to the real property as to pass by the sheriff's deed; and, *second*, if so, whether upon its severance it became personal property so as to be recoverable in the present action.

The general rule of law is, that whatever is once annexed to the freehold becomes parcel thereof, and passes with the conveyance of the estate. Though the rule has been in modern times greatly relaxed, as between landlord and tenant, in relation to things affixed for the purposes of trade and manufacture, and also in relation to articles put up for ornament or domestic use, it remains in full force as between vendor and vendee. As a general thing, a tenant may remove what he has added, when he can do so without injury to the estate, unless it has become by its manner of addition an integral part of the original premises. (2 Kent, 343; 1 Parsons on Con., 431, and cases cited in note.) But not so a vendor; as against him all fixtures pass to his vendee, even though erected for the purposes of trade and manufacture, or for ornament or domestic use, unless specially reserved in the conveyance. Thus, potash kettles, appertaining to a building for manufacturing ashes, (Miller *v.* Plumb, 6 Cow., 665;) a cotton-gin, fixed in its place, (Bratton *v.* Clawson, 2 Strob., 478;) a steam-engine, to drive a bark-mill, (Oves *v.* Ogelsby, 7 Watts, 106;) kettles set in brick, in dyeing and print-works, (Dispatch Line of Packets *v.* Bellamy Company, 12 N. H., 207; Union Bank *v.* Emerson, 15 Mass., 159;) iron stoves fixed to the brick-work of chimneys, (Goddard *v.* Chase, 7 Mass., 432; )and wainscot-work, fixed and dormant tables, are held to pass to the vendee under a conveyance of the land.

In Elwes *v.* Maw, (3 East, 38,) Ellenborough says that questions respecting the right to fixtures, principally arise between three classes of persons : *first,* between the heir and executor; *second,* between the executors of tenants for life or in tail, and the remainderman and reversioner ; and, *third,* between landlord and tenant; and observes that " as between heir and executor the rule obtains with the most rigor in favor of the inheritance, and against the right to disannex therefrom, and to consider as a personal chattel anything which has been affixed thereto ;" and Mr. Justice Story, in Powell *v.* Monson and Brimfield Manufacturing Company, (3 Mason, 465,) after stating the general rule that whatever is once annexed to the freehold, becomes parcel thereof, and can not be afterwards severed but by him who is entitled to the inheritance, remarks, that " as between heir and executor, the rule has never been relaxed, unless the case of the cider-mill, cited in Lawton *v.* Lawton, (3 Atk., 13,) is an exception, which may, perhaps, as the note there suggests, have turned upon a custom, or, as Lord Ellenborough, in Elwes *v.* Maw, (3 East, 38,) considers it, may be deemed a mixed case between enjoying the profits of land, and carrying on a species of trade."

The same strict rule which applies between heir and executor, applies equally between vendor and vendee, and between mortgagor and mortgagee. (2 Kent, 346; Day *v.* Perkins, 2 Sand. Ch., 364.)

The engine and boilers, etc., severed from the mill, in the present case, were clearly fixtures within the definition of the term as given by the adjudged cases, and were covered by the mortgage, and passed to the plaintiffs with the deed of the sheriff. They were permanently fastened to the building, which had its foundation in the ground, and they could not be removed without injury to the premises. (Amos and Ferard, 2.)

Pfeiffer possessed the right to the use and possession of the premises until the execution of the deed, but he possessed no right to despoil the property of its fixtures. The deed took effect by relation, at the date of the mortgage, and passed fixtures subsequently annexed by the mortgagor. (Winslow v. Mer. Ins. Co., 4 Met., 313.) By their wrongful severance, the fixtures became personal property, for the recovery of which the present action was properly brought. (Farrant v. Thompson, 5 Barn. & Ald., 826; Cresson v. Stout, 17 John., 116; Mooers v. Wait et al., 3 Wend., 108; Schermerhorn v. Buell, 4 Denio, 425; Morgan v. Varick, 8 Wend., 591.)

It is true, the plaintiffs, had they been aware of the intention of Pfeiffer, might have applied to the Court, and obtained an injunction restraining the removal, under section two hundred and sixty-one of the Practice Act, but they were not restricted to this course. The remedy afforded by the section is only preventive; it is not exclusive of any other remedy.

The defendant Schleischer is the only appellant, and he admits in his answer that he was in possession of the specific articles recovered of him. The objection to the misjoinder of the defendant Pfeiffer should have been taken in the Court below; it can not be taken in this Court for the first time.

Judgment affirmed.