# Newbold *v.* Smart.

*Bill in Equity by Tenant in Common, against Co-tenant, to enforce Lien on common property for over-payment of purchase-money.*

1. *Tenant in common; has lien on land for excess of payment of purchase-money above his share.*—Where two purchasers of land take a conveyance in their joint names, thereby becoming tenants in common, by force of the statute, (Code, § 2191), and jointly execute a mortgage on the lands, to indemnify their surety on the purchase-money note; if one pays more than his proportion of the debt, he has an equitable lien, for the excess, on the interest of his co-tenant in the land.

2. *Same; not liable to each other, for use and occupation.*—Tenants in common are siezed *per my et per tout*, and each has an equal right to occupy the premises; and unless the one in actual possession, denies the other the right to enter, or agrees to pay rent, nothing can be claimed for such occupation.

3. *Same; unequal occupation by one, simple contract debt, creating no lien.*—If one tenant in common owes another for unequal use and occupation of the common property, it is a simple contract debt, and creates no lien on the land.

4. · *The right of homestead does not prevail against valid liens.*—The right of homestead does not prevail against valid liens, and cannot be asserted by one of two tenants in common against the other's equitable lien, for an excess of purchase-money paid by him, over and above his share.

APPEAL from Mobile Chancery Court.

Heard before Hon. H. AUSTILL.

This was a bill in Chancery, filed on the 20th day of August, 1877, by Jas. F. Smart against Robert E. Newbold. The bill alleged, that on November 12, 1873, complainant and said Newbold purchased certain lands at administrator's sale, agreeing to pay $600 for them; that being unable to pay cash, they procured J. P. Martin & Co. to endorse their notes for the purchase-money, which were then accepted as cash by the distributees of the estate; that the probate court confirmed the sale to them, and the administrator, by decree of the court, executed a conveyance to them; that they executed a mortgage on the lands to J. P. Martin & Co., to secure them against loss by reason of their endorsement on the notes; that said Martin & Co., who were engaged in buying and selling hides, agreed with complainant, who was engaged

in business as a butcher, that they would take from him in payment of the mortgage debt hides, tallow, &c.; that in accordance with this agreement complainant delivered hides, tallow, &c., to Martin & Co. until September, 1876, when he received an account from them showing that there was a balance of $167.50 still due on the debt; that complainant disputed the correctness of this account, and Martin & Co. proceeded to advertise the property for sale under the mortgage; that Newbold, who had been in exclusive possession and enjoyment of the property, and who had agreed to pay one-half the purchase-money, but who had not paid anything up to this time, paid said sum of $167.50 to Martin & Co., and the mortgage was then cancelled; that said sum of $167.50 was not due on the mortgage debt. The bill prayed that an account might be taken of what they, Newbold and Smart, had each paid on the mortgage debt; that Newbold be charged with interest on that portion of the purchase-money paid by complainant for him, and with the rent received by him from the property, and interest thereon; that an account be taken as to whether the said sum of $167.50 was due to Martin & Co.; that a lien in favor of the complainant, be declared on the land for the amount thus ascertained to be due by said Newbold; that his interest be sold and the complainant put in possession of the land. Newbold answered, admitting the allegations of the bill, as to the purchase of the land, to be true, and averred that he was for a short time engaged in the butchering business, as a partner of Smart's; that the value of the hides to be furnished Martin & Co. was not to be credited on the mortgage debt; that it was not understood, or expected that Martin & Co. would have the notes to pay at maturity; that respondent and Smart, being partners, furnished Martin & Co. with hides to the value of about $200; that Martin & Co. had paid for the greater part of the hides in money; that the account of Martin & Co. with Smart, showing a balance due of $167.50 was correct; that respondent had paid this balance; that he had paid half the purchase-money; denied that he had enjoyed the use of more than one-half the property; denied that he owed Smart for any rent, and pleaded that he was in possession, owning, and occupying one-half of said land, as his homestead, and that it was exempt to him, as such, under the constitution and laws of the State. He also demurred to the bill on the ground that the claim set up therein, was a mere debt for which the complainant had no lien on the lands. The Chancellor rendered a decree overruling the demurrer, and declaring the plea of homestead insufficient. He also decided on the evidence that the par-

[Newbold v. Smart.]

ties were partners in the butchering business at the time of the purchase, and for a short time afterwards ; and that the hides delivered to Martin & Co. during that time should be credited on joint account; that the register take, and state an account of the amount of purchase-money paid by each party, and of the rents, allowing credit to Newbold for the value of one-half the hides furnished Martin during the partnership, and the $167.50 paid by him. The register reported that there was a balance due Smart, on account of the purchase-money overpaid, and the rents, of $835.97, and that the respondent was indebted to complainant, Smart, to the amount of $304.02 ; being half the difference between $835.97, the amount paid by Smart, and $227.93, the amount paid by Newbold. The defendant excepted to the register's report, because in making up the account he charged Newbold with the rental value of all the land. 2. Because Newbold was charged with $350, the entire amount of the rent, as part of the purchase-money of the land. The respondent also moved to dismiss the bill for want of equity. The Chancellor in his final decree overruled this motion, confirmed the register's report, decreed a lien on the land in favor of Smart for $304, the amount ascertained to be due by the register, and also decreed a sale of the land to satisfy the debt. The errors assigned are, overruling the demurrer to the bill, denying the motion to dismiss for want of equity, overruling the exceptions to the register's report, and decreeing the land to be sold.

S. Croom, for appellant.—If anything was due from Newbold to Smart it was a mere debt, for the payment of which Smart had no lien which is recognized in equity.—*Foster v. Trustees*, 3 Ala. 302 ; *McKay v. Green*, 3 John. Ch. Rep. 56 ; Notte's Appeal, 45 Pa. St. 361. There was not even a resulting trust in favor of Smart, because the money was not paid at the time the title was taken.—*Preston & Stetson v. Miller*, 53 Ala. 84. Newbold had a homestead in this land which the decree of the Chancellor should have recognized and protected. — *McGuire v. Vanpelt*, 55 Ala. 359. The register, in stating the account, blended the purchase-money with the rents, and it is well settled that a tenant in common is not liable for rent to his co-tenant, even though he occupies the whole property, unless he has agreed to pay rent.—*Lockhart v. Lockhart*, 16 Ala. 423 ; Viner's Abridgment, Joint Tenants, 525.

Boyles & Overall, for appellee.—Partners in the purchase of lands have an equity against each other for the pur-

pose of producing equality among themselves, and this equity fastens itself, and is a lien upon their respective interests. *Pearl v. Pearl*, 1 Cooper's Ch. Rep's. (Tenn.) 206 ; *Lorimer v. Lorimer*, 6 Madd. (E. C.) 223 ; *Yates v. Pemberton*, 3 Cald. (Tenn.) Equity will hold the common property bound for an excess in the sum paid by one tenant in common, over the other.—*Rankin v. Black*, 1 Head. 600 ; *Gee v. Gee*, 2 Sneed 402. A tenant in common who pays taxes on the common property, is entitled to a lien until he is reimbursed.—42 Iowa, 36. So also, for incumbrances removed.—*Fitsworth v. Stout*, 49 Ills. 78. The amount due from Newbold for rent stands on as high a plane of equity as the claim for the purchase-money, for both arises out of the joint purchase, and it is inequitable to permit Newbold to enjoy the exclusive enjoyment of the property. The plea of a homestead in the land was properly decreed to be insufficint. A man must first acquire a homestead—must own the property, and free it from prior incumbrances, done or suffered by him, before he can claim it as such. See, in this connection, *Shepherd v. White*, 11 Tex. 354 ; *Stone v. Parnell*, 20 Tex. 14.

STONE, J.—In *Foster v. Trustees of the Athenœum*, 3 Ala. 302, this court decided, that " a surety of a vendee, who is compelled to pay the purchase-money, has no lien in equity upon the land " for reimbursement. The reason given was, that by the payment of the debt on which he was surety, the instrument evidencing the debt became *functus officio*. In other words, that the debt, to which the lien attached as an incident, ceased to exist when it was paid ; and left nothing to which the lien could stand as an incident. The principle of that case has never been departed from, but has been frequently cited approvingly.—*Chapman v. Abraham*, 61 Ala. 108. It is not our intention to enter into discussion of that case, nor of the principle on which it was said to rest.

The present case is different in its facts. Smart and Newbold, complainant and defendant, jointly purchased the lands brought to view in the present proceedings. They purchased on credit, received a conveyance in their joint names, and John P. Martin & Co. became their endorsers and sureties for the payment of the purchase-money. They executed a joint mortgage of the purchased premises to John P. Martin & Co. to bear them harmless against their said indorsement. Smart claims, and shows, that he paid more than half the purchase-money, and this bill is filed to enforce a lien on Newbold's undivided interest, for the excess of payments over one-half, paid by Smart. Smart claims he has such lien, growing out of the facts of this case. The lien is denied by

Newbold, and he claims that the premises are exempt to him as his homestead. It is clear that, under the facts attending this purchase, and the payment of the purchase-money, Smart and Newbold became tenants in common of the premises under our statute, which converts all joint tenancies into tenancies in common.—Code of 1876, § 2191. *Rankin v. Black*, 1 Head, (Tenn.) 650, was a case of joint purchase of land, and unequal payment of the purchase-money. The court said : " Where the adventure is joint, each is entitled to participate equally in profit or loss, without regard to equality in payment. But it is a clear principle of equity, that the common property will be held bound for any excess paid by one over the other. It is analagous to the law of partnership, by which, as between the partners, the capital must be recognized out of the partnership effects, before the profits can be divided." The complainant, in that case, has claimed that he was entitled to an excess of the land, commensurate with the excess of payment he had made above a moiety. In *Gee v. Gee*, 2 Sneed, 395, the same court said, speaking of a case of joint and equal purchase : " In the adjustment of accounts between themselves, the matter must be equalized ; and the land, with the proceeds, if sold, would be held barred by a court of equity for the excess paid by either, above his one-half of the consideration." In *Titsworth v. Stout*, 49 Ill. 78, it was ruled, that ".where one tenant in common removes an incumbrance from the common estate, the other tenants must contribute to the extent of their respective interests, and, to secure such contribution, a court of equity will enforce upon such interests an equitable lien, of the same character with that which has been removed by the redeeming tenant." The same principle was declared in *Fisher v. Allen*, 52 Ill. 379. In *Oliver v. Montgomery*, 42 Iowa, 36, it was held, that a co-tenant, who paid the taxes upon the property held in common, was subrogated to the State's lien on the property, and could enforce such lien for his own reimbursement. In 1 Jones on Mort. § 878, is this language : " If one joint mortgagor, in order to protect his interest, pays the joint debt, he is subrogated to the interest of his joint mortgagor, until he is repaid." *Owen v. McGehee*, 61 Ala. 440, was a joint purchase of a tract of land by four, with an agreement to divide in certain proportions, each to pay in proportion to the quantity of land he obtained. The purchase was made in Owen's name, but they executed a joint note for the purchase-money. Owen paid more, and McGehee less than his proportion. On bill by Owen, it was decreed, that he had a lien on the part which fell to McGehee in division, for the unpaid portion which McGehee should

have paid.   In this case, the title had been taken in the name of Owen.   The Chancellor rightly ruled, that Smart had a lien on Newbold's half interest in the lands, for the sum of the mortgage debt, he, Smart had paid, over and above his moiety.

The claim against Newbold, for unequal use and occupation by him, stands on a different footing.   If it were true that Newbold owes Smart for that use, it would, at most, be only a simple contract debt, with no lien whatever on the land for its payment.   But, under the averments and proof in this case, Smart shows no claim against his co-tenant for rents, or for use and occupation.   Tenants in common are seized *per my et per tout.*   Each has an equal right to occupy ; and unless the one in actual possession denies to the other the right to enter, or agrees to pay rent, nothing can be claimed for such occupation.   Such possession by one is treated as had, with the consent and approbation of the co-tenant. " A mere participation in the profits of land, with a joint occupation, or an occupation which does not exclude the owner from possession, will not amount to a tenancy."—Taylor's Landlord and Ten. § 24.   In *Badger v. Holmes*, 6 Gray, 118, the court said :   " Nothing is better settled than the rule, that the mere occupation of premises owned in common, by one of the tenants in common, does not entitle his co-tenant to call him to account, or render him in any way liable to an action for the use and occupation of the estate.   Each owns the estate *per my et per tout.*   If a co-tenant does not see fit to come in and occupy, the other still has the right to the enjoyment of the estate ; and in such case, the sole occupation of one, is not an exclusion of the other.   Each tenant, being seized of each and every part and parcel of the estate, has a right to the use and enjoyment of it ; and so long as he does not hold his co-tenant out, or in any way deprive him of the occupation of the estate, he exercises only a legal right, and receives nothing for which he is bound to account to his co-tenant."   To the same effect are the following authorities ; *Graham v. Pierce,* 19 Grat. 28 ; *Israel v. Israel.* 30 Md. 120 ; *Hutton v. Powers,* 38 Mo. 353 ; *Everts v. Bench,* 31 Mich. 136 ; *Bird v. Bird,* 15 Fla. 424 ; *Campbell v. Campbell,* 21 Mich. 485; *Barrell v. Barrell,* 25 N. J. Eq. 173 ; *Austin v. Ahearm,* 61 N. Y. 6, 14.   In 1 Washb. on Real Prop. 570, [420], is this language :   " To render one co-tenant liable to another for rent, or for use and occupation, there must be something more than an occupancy of the estate by one, and a forbearance to occupy by the other.   The tenant who merely occupies the estate does no more than he has a right to do on his own ac-

count." The Chancellor erred in decreeing any relief to complainant on account of use and occupation.

The testimony on the question whether Smart and Newbold were at any time partners in the butchering business, is in direct conflict. The Chancellor found they had been such partners for a brief time, and there is not enough in this record to convince us he erred. His ruling on that question is affirmed.

The question on Newbold's liability for rents is presented, without any reference to exceptions attempted to be filed to the report of the register. The Chancellor, in his decree of reference, instructed the register to inquire into that matter. Moreover, our ruling, in disallowing that charge, is not based on the testimony, on which the register acted. We disallow it, because, under the law, Newbold is not liable to pay it. On all other items of the account we are satisfied with the register's finding. In fact, we do not understand counsel as seriously assailing any other items of the account, save those considered above. The claim set up by Newbold in his answer, that at the time of the purchase Smart was indebted to him, and agreed that that should be estimated in adjusting the burdens of the purchase, fails for want of satisfactory proof. Eliminating from the account the item of $350 charged against Newbold, for use and occupation, the register's finding and report on the facts is satisfactory to us. The record enables us to make a correct statement of the account, and we will proceed to do so. The register found that Newbold's payments, with interest, amounted to $227.93. He allowed to Smart, for his payments, including interest, $835.97. From this should have been deducted $350, improperly charged against Newbold. The true credit which should have been allowed Smart was, and is, $485.97. Deducting Newbold's allowance—$227.93—from this, shows Smart's payments to have exceeded Newbold's by $258.04; one-half of which, $129.02, was the true amount Newbold owed Smart as of the day of the report, July 9th, 1878. Instead of decreeing that defendant below—appellant here—was indebted to complainant in the sum of three hundred and four dollars, bearing date July 9, 1878, it should have been one hundred and twenty-nine 2-100 dollars, as of that date.

The decree of the Chancellor is reversed, and a decree here rendered, correcting the register's report so as to show that defendant was indebted to complainant, July 9th 1878, in the sum of $129.02—and decreeing to complainant, in all other respects, the relief decreed to him by the Chancellor.

Let appellee pay the costs of appeal in the court below and in this court.

[Nabers' Adm'r v. Meredith et al.]

What we have said disposes of the question of homestead, as that right does not exist against valid liens.

Reversed and rendered.