## HAGUE v. AHRENS.

### (Circuit Court of Appeals, Third Circuit. November 10, 1892.)

#### No. 3.

1. **LANDLORD AND TENANT—LEASE—ASSIGNMENT—CONDITIONS AND COVENANTS.**
   A lease contained the following clause: "This lease not to be sold, assigned, or transferred without the written consent of the party of the first part." *Held*, that this was a covenant, and not a condition, and the lease would pass by an assignment without the lessor's consent, so that the assignee could maintain ejectment under it.

2. **SAME—INSTRUCTIONS—SURRENDER OF LEASE.**
   A request to charge that a surrender of a lease had occurred by operation of law because of the facts therein stated contained only a part of the facts bearing on the question of surrender. *Held*, that the court properly refused the request, and submitted the question to the jury on all the evidence.

3. **SAME—EJECTMENT—BURDEN OF PROOF.**
   Where, in an action of ejectment, based upon a lease from the owner, defendant relies on an alleged surrender thereof, the burden is on him to show it, and that burden is not shifted merely because the evidence as to the surrender went in with plaintiff's proofs.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action of ejectment brought by George H. Ahrens against W. W. Hague. Judgment for plaintiff. Defendant brings error. Affirmed.

William H. Webb, being the owner of certain lands, made a lease thereof for 15 years to O. & J. Siggins, for the purpose of mining for oil and gas. The lease contained the following clause: "This lease not to be sold, assigned, or transferred without the written consent of the party of the first part." The lease also provided that the mining operations therein contemplated should be prosecuted with diligence, and that no cessation of work should continue over 30 days, and also that the lessees might terminate and surrender the lease at any time after it should be proved by drilling one or more wells that oil could not be found on or under the land in paying quantities. The lessees never entered under the lease, but, without the consent of the lessor, assigned it to the Citizens' Gas Company, who entered and drilled a well upon the land. After obtaining some gas, which they did not utilize, they drilled for a short time, when they lost or "stuck" their drill in the well, and wholly ceased operations upon the land, and removed the engine and boiler used in drilling. Some months after the Citizens' Gas Company ceased drilling, Webb made another lease to Hague, (the defendant,) who, finding the possession vacant, entered and drilled a well thereon, which produced gas in large quantities, and rendered the land profitable to the owner and lessee. While so engaged, the Citizens' Gas Company made no claim of any right or interest in the premises, but some time thereafter executed a paper purporting to

assign the lease under which they claimed to Ahrens, (the plaintiff,) who brought this action of ejectment against Hague to recover possession of the premises.

Carl I. Heydrick, Roger Sherman, and Samuel Grumbine, for plaintiff in error.

John P. Vincent and Wilbur & Schnur, for defendant in error.

Before DALLAS, Circuit Judge, and BUTLER and BUFFINGTON, District Judges.

BUTLER, District Judge. The errors assigned are as follows:

First. "In its answer to the said defendant's first prayer for instructions to the jury, which prayer was as follows, to wit: 'The lease from W. H. Webb to Orin Siggins and John Siggins, by its express terms, is not assignable, except by and with the consent in writing of the said W. H. Webb, and, no such consent having been shown, the plaintiff has shown no such title under said lease as will support this action;' and was answered by the court as follows, to wit: 'Refused.'"

Second. "In its answer to the said defendant's second prayer for instructions, which prayer was as follows, to wit: 'The lease under which the plaintiff claims, on the one hand requires that the lessee shall prosecute the mining operations therein contemplated with reasonable diligence so long as they shall hold thereunder, and not cease operations for more than thirty days, and on the other hand provides for a surrender by the lessees before the expiration of the term. Therefore, if the lessees, or those claiming under them, commence the drilling of a well upon the premises, and after drilling the same to the depth of about 1,500 feet, and while continuing the drilling "stuck" the tools in the well and never thereafter took them out, or in any manner rendered the well productive of profit to the lessor, but on the contrary wholly ceased operations upon the land, and removed their engine and boiler from the premises, and thereafter made no claim to any right or interest in the premises while the defendant, Hague, was drilling thereon until after he had obtained a large and profitable gas well thereon, such acts and omissions amount to a surrender by act and operation of law, and the plaintiff cannot recover;' and was answered by the court as follows, to wit: 'Refused.'"

Third. "In that portion of its charge to the jury which was as follows, to wit: 'On the other hand it is claimed by the defendants that the whole conduct of the gas company is consistent with the theory that it gave up the property, failing to strike a productive well, and that its actions must lead to a conviction that it had indefinitely suspended operations and abandoned the property, and that it was only after the defendant commenced operations and obtained a good well that the gas company concluded to hold on to its lease. The testimony has been fully reviewed by the counsel, and it is not necessary that it be again detailed to you. The burden is upon the defendants to satisfy you upon this question.'"

The court treated the clause of the lease (recited in the first assignment) as a covenant, simply. The plaintiff urged and still urges

that it is a "limitation." By this term he must be understood to mean a condition subsequent, or a conditional limitation; as applied it can have no other signification. Was the court right? A condition subsequent is a contingency named, on the happening of which a grant may be defeated,—such as the failure to pay money, erect buildings, or do any other required act, the failure to do which authorizes the grantor's re-entry. A conditional limitation—an example of which is a grant to one so long as he occupies the premises, or to a widow during widowhood—differs from it only in form, and the fact that re-entry is not necessary to terminate the grant. The law regards conditions with the same disfavor it does forfeitures; and for similar reasons. A clause will not therefore be treated as a condition if it can be construed a covenant without violence to its terms. If the purpose to create a condition, or conditional limitation, is not expressed in clear, unequivocal language—as the courts have frequently said in "apt terms," such as "upon condition," "provided nevertheless," "so long as," "during," etc.—the clause will be treated as a covenant, simply. The provision under consideration does not contain such language. The terms, "This lease shall not be sold, assigned, or transferred, without the written consent of the party of the first part," convey no suggestion even that the lease may be lost by such transfer. They express simply an agreement by the lessee, who alone could make the transfer, that he will not do it. If the lessor was not satisfied with the remedy which the law affords for breaches of such agreements he should have stipulated for another by adding terms of condition or forfeiture. That he knew very well how to do this, and had it in mind, as respects breaches of other provisions of the lease, is shown by the following clause: "A failure to pay the money after demand made, or put down the well, as hereinafter stipulated, shall forfeit this lease within one year from the date hereof." The inference is strong, therefore, that he did not contemplate similar consequences as the result of a transfer.

This construction has the support of abundant authority. In Doe v. Godwin, 4 Maule & S. 265, the lease contained a similar provision against assigning; and also a provision for forfeiture on breach of other covenants. The court held that there was no right of re-entry for breach of the provision against assigning; that it did not create a condition but a covenant merely. In Crawley v. Price, L. R. 10 Q. B. 302, the lease contained a similar provision; and it was held that the lessor could not re-enter for its breach; that it was not a condition, but a covenant merely; and that a right of re-entry provided for the breach of other covenants, could not, under the circumstances, be applied to it. In Shaw v. Coffin, 14 C. B. (N. S.) 372, the lease contained the following clause: "The tenant agrees that he will not underlet the premises without consent of the landlord." On its breach the court held that it did not create a condition, for the reason, as expressed, that no words of agreement merely will create a condition; that to produce this effect apt terms must always be employed. In Den v. Post, 25 N. J. Law, 285, the lease contained a similar clause; and upon its breach the court held it to be a covenant merely and not a condition, saying that to war-

rant a different construction, other language, plainly indicating the purpose to create a condition as provision for re-entry, forfeiture, etc., must be employed. In Spear v. Fuller, 8 N. H. 174, where a similar provision was under consideration, the court held it to be a covenant merely, and not a condition. The authority of this case is weakened however by the fact that its ruling does not rest exclusively on this ground. In Wheeler v. Dascomb, 3 Cush. 285, the lease contained the following provision: "The tenant agrees to deliver up the premises (during the term) on three months' notice." This it was held did not create a condition, for the same reason—the absence of appropriate language to express such a limitation. See, also, 1 Washb. Real Prop. §§ 504–506, 510, 511. The plaintiff refers us to Mason v. Corder, 7 Taunt. 9, and Hynes v. Ecker, 34 Mo. App. 650. The former is a decision on motion for new trial, and is so meagerly and unsatisfactorily reported as to be of little value. The latter is a decision of the district court of St. Louis and Kansas City, and does not seem to involve the question.

The point recited in the second assignment, the answer to which is also complained of, requested the court to say that because of the facts therein stated a surrender by operation of law had occurred. The statement contains only a part of the facts bearing on the question. The court refused the point and submitted the question of surrender to the jury on all the evidence. In this we think it was right.

The third assignment is based on the court's instruction that the burden of proof respecting the question of surrender was on the plaintiff in error. Here again we think the court was right. It is immaterial that the testimony respecting the question, on which the plaintiff relied, went in with the defendant's proofs. The allegation of surrender was the plaintiff's—was a part of his case—and he was therefore bound to sustain it, by reference to the necessary proof. Finding no error in the several assignments, the judgment is affirmed.